UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 9448 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| ILLINOIS CHEER EXTREME ATHLETICS, INC., a corporation, BRADLEY ABRAHAMS, JANE DOE, and JILL DOE, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

In March 2010, Jane Doe sued Illinois Cheer Extreme Athletics, Inc., and Bradley

Abrahams in Illinois state court on behalf of herself and her daughter, Jill Doe; the Does are

identified by pseudonyms because their suit alleged that Abrahams sexually abused Jill while she

was enrolled in cheerleading classes at Illinois Cheer.  *Jane Doe, Individually and as Mother and*

*Next Friend of Jill Doe, a minor v. Illinois Cheer Extreme Athletics, Inc.*, No. 10 L 370 (DuPage

Cnty. Cir. Ct.).  After Illinois Cheer tendered its defense to Nationwide Mutual Insurance

Company, Nationwide filed this suit in federal court against Illinois Cheer, Abrahams, and the

Does, seeking a declaratory judgment that its duties under the applicable insurance policy are

limited to paying Illinois Cheer $100,000 in defense costs.  Doc. 17.  Abrahams failed to appear

and was defaulted.  Doc. 52.  Nationwide has moved for judgment on the pleadings, and Illinois

Cheer and the Does have cross-moved for summary judgment.  Docs. 30, 32, 35.  Nationwide's

motion is granted, and Illinois Cheer's and the Does' motions are denied.

## Background

The following facts, which largely pertain to the terms of the insurance policy and the content of the state court complaint's allegations, are undisputed.

Abrahams was "a shareholder, officer, coach and employee" of Illinois Cheer. Doc. 18 at ¶ 27; Doc. 20 at ¶ 27. The Does' state court complaint alleges these facts:

- Illinois Cheer and Abrahams were "the voluntary custodians of JILL DOE, a Minor who was present upon the premises of [Illinois Cheer] for the purpose of receiving care, instruction and supervision in the sport of cheerleading from [Illinois Cheer] and other agents, servants and/or employees of [Illinois Cheer]." Doc. 17-4 at ¶ 14.

- During and prior to 2006, Illinois Cheer had "actual notice of the dangerous criminal propensities of [Abrahams] to sexually abuse and/or assault young girls in the course of providing cheerleading instruction, care and supervision." *Id*. at ¶ 15.

- Beginning in December 2005, Abrahams made sexual advances toward Jill Doe, who was thirteen years old at the time. *Id*. at ¶ 16.

- In March and April 2006, Abrahams engaged in several "act[s] of sexual penetration" with Jill Doe at Illinois Cheer's facilities. *Id*. at ¶¶ 17-20.

- Abrahams had four sexual encounters with Jill Doe at his residence in Oswego, Illinois, between December 2005 and March 2006. *Id*. at ¶ 21.

In October 2009, Abrahams pleaded guilty to the Class 2 felony of aggravated criminal sexual abuse of a minor, in reference to Jill Doe. Doc. 17-5.

The Does' state court complaint states negligence, willful and wanton misconduct, and fiduciary duty claims against Illinois Cheer. Doc. 17-4 at 7-12. The negligence claim alleges:

23.    "ICE" [Illinois Cheer], by and through its authorized agents, officers, directors, servants and/or employees, after assuming the care, training and/or supervision of JILL DOE, a Minor, in breach of its aforementioned duty, was then and there guilty of one or more or all of the following negligent acts and/or omission to act:

a)    carelessly and negligently failed to supervise the defendant, BRADLEY ABRAHAMS, when they knew or should have known of

his dangerous criminal propensities to commit acts of sexual abuse/assault against young girls;

b) carelessly and negligently failed to adequately supervise and control the Minor Plaintiff so as to protect her from acts of sexual abuse/assault committed by the defendant, BRADLEY ABRAHAMS;

c) carelessly and negligently retained the defendant, BRADLEY ABRAHAMS as an employee when they knew or should have known of his dangerous criminal propensities to commit acts of sexual abuse/assault against young girls;

d) carelessly and negligently failed to train and/or instruct its agents, officers, directors, servants and/or employees to recognize and prevent incidents of sexual abuse/assault against young girls under its care;

e) carelessly and negligently failed to prevent the sexual abuse/assault of the Minor Plaintiff when they knew or should have known of the sexual abuse/assault against the Minor Plaintiff;

f) carelessly and negligently failed to warn the Plaintiff or the Minor Plaintiff of the known and suspected criminal propensities of the defendant, BRADLEY ABRAHAMS, to commit acts of sexual abuse/assault against young girls;

g) carelessly and negligently failed to have proper procedures or rules in place including but not limited to rules to prevent unsupervised contact between coaches and cheerleaders;

h) carelessly and negligently failed to train and/or instruct its agents, officers, directors, servants and/or employees to recognize conduct classified as "pre sexual grooming"[;]

i) carelessly and negligently allowed the defendant, BRADLEY ABRAHAMS, to work with young girls at "ICE" when they knew or should have known of his dangerous criminal propensities to commit acts of sexual abuse/assault against young girls;

j) carelessly and negligently failed to report the instances of sexual misconduct to the appropriate agency;

k) was otherwise careless and negligent in providing services to the Minor Plaintiff[.]

*Id*. at 7-8.  The willful and wanton misconduct claim is identical to the negligence claim, except that it alleges that the foregoing acts were committed recklessly rather than negligently.  *Id*. at 9-10; *see Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887 (Ill. 2012) (holding that "willful and wanton conduct is regarded as an aggravated form of negligence," and that "[i]n order to recover damages based on willful and wanton conduct, a plaintiff must plead and prove the basic elements of a negligence claim—that the defendant owed a duty to the plaintiff, that the defendant breached that duty, … that the breach was a proximate cause of the plaintiff's injury," and that the defendant had "a deliberate intention to harm or a conscious disregard for the plaintiff's welfare") (citation omitted).  The breach of fiduciary duty claim alleges:

> 22. "ICE", by and through its authorized agents, officers, directors, servants and/or employees, including but not limited to the defendant, BRADLEY ABRAHAMS, held themselves out to students and their parents as coaches and instructors on cheerleading matters.  Accordingly, the plaintiffs placed great trust in "ICE"'s coaches, staff members, administrators and founders, including the defendant, BRADLEY ABRAHAMS.  "ICE" maintained and encouraged such relationships with the Plaintiffs, accepted the Plaintiffs' trust and thus entered into a fiduciary relationship with Plaintiffs.

> 23. This fiduciary relationship with the Plaintiffs established a duty of good faith, fair dealing and the duty to act with the highest degree of trust and confidence in the best interest of its minor students, including the Plaintiffs.  This fiduciary relationship includes the duty to warn, duty to disclose, the duty to prevent and the duty to protect minors and vulnerable young adults from sexual exploitation by "ICE" employees and agents in positions of authority or control over "ICE"'s students.

> 24. By holding "ICE" out as a safe, secure, educational and athletic environment the defendant, "ICE" entered into a fiduciary relationship with the plaintiffs.

> 25. The defendant, "ICE", breached its fiduciary duty to the plaintiff by engaging in and allowing the conduct described herein.

Doc. 17-4 at 11-12.

4

Illinois Cheer (actually, Illinois Cheer's parent, but the parties make nothing of that detail, which consequently will be ignored) at all relevant times had an insurance policy with Nationwide. Docs. 17-6, 17-7. The policy limits are $1 million per occurrence and $2 million in the aggregate. Doc. 17-6 at 14. Pertinent here, the policy defines an "insured" as "[a]n organization other than a partnership, joint venture or limited liability company"—which in this instance is Illinois Cheer—together with its "'executive officers' and directors … but only with respect to their duties as [the organization's] officers or directors." *Id*. at 25. The policy obligates Nationwide, subject to applicable exclusions, to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' … to which this insurance applies," and it gives Nationwide the "right and duty to defend the insured against any 'suit' seeking those damages." *Id*. at 17. The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person," which "includes mental anguish, mental injury, shock, fright, humiliation, emotional distress or death resulting from bodily injury, sickness or disease." *Id*. at 29, 34.

The policy's Abuse or Molestation Exclusion ("Exclusion"), which is technically an endorsement to the policy, states in relevant part:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> The following exclusion is added to Paragraph 2, Exclusions of Section I—Coverage A—Bodily Injury And Property Damage Liability and Paragraph 2, Exclusions of Section I—Coverage B—Personal And Advertising Injury Liability:
>
> This insurance does not apply to "bodily injury" … arising out of:
>
> > 1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2. The negligent:
    a. Employment;
    b. Investigation;
    c. Supervision;
    d. Reporting to the proper authorities, or failure to so report; or
    e. Retention;
of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

Doc. 17-7 at 10.

The policy's Abuse or Molestation Endorsement ("Endorsement"), also technically an endorsement to the policy, states in relevant part:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Except as provided below, this insurance does not apply to any claim or suit brought against any Insured alleging "bodily injury," … arising, in whole or in part, out of:

1. The actual or threatened abuse or molestation by any Insured of any person, or

2. The negligent:
    a. Employment;
    b. Investigation;
    c. Supervision;
    d. Reporting to the proper authorities, or failure to so report; or
    e. Retention;
of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1 above.

Notwithstanding the foregoing, the Company will reimburse you for "defense costs" which result from a claim in any way arising out of any such abuse or molestation.  We have no obligation or duty to defend against any claim arising out of abuse or molestation.

…

The most we will reimburse you for "defense costs" arising out of any one abuse or molestation claim is $100,000 and shall not exceed $100,000 in the aggregate during the policy period for "defense costs" arising from all such abuse or molestation claims.

…

"Defense costs" include:
a. The cost of litigation, and claim investigation or legal expenses, which can be directly allocated to a specific claim if incurred by us or with our consent.
b. All reasonable costs that an insured incurs at our request to help us investigate or defend a claim including up to $100 a day for actual loss of earnings.

…

Premium charge for this endorsement:  $500/MEMBER

*Id.* at 31.  The Endorsement does two things.  First, it restates in part the exclusion of abuse and molestation claims set forth in the Exclusion; as discussed below, the Endorsement's exclusion has a narrower scope than the Exclusion.  Second, beginning with the word "Notwithstanding," the Endorsement provides that despite its exclusion of certain abuse and molestation claims, Nationwide will reimburse Illinois Cheer for up to $100,000 in defense costs in defending any such claims.  Unlike the Exclusion, the Endorsement applies only upon payment of a premium. *Id.* at 30 ("Coverage provided by Form SRPG2146, Abuse or Molestation Endorsement, applies only when the insured member enrolls and pays for the optional Abuse or Molestation coverage.").  Illinois Cheer purchased coverage under the Abuse or Molestation Endorsement. Doc. 18 at ¶ 35; Doc. 20 at ¶ 35.

After being named in the underlying state court action, Illinois Cheer tendered its defense to Nationwide.  Doc. 18 at ¶ 36; Doc. 20 at ¶ 36.  Pursuant to a reservation of rights, Nationwide declined coverage but agreed to reimburse Illinois Cheer for up to $100,000 of its defense fees and expenses, pursuant to its understanding of the Endorsement.  Doc. 18 at ¶¶ 37-38; Doc. 20 at ¶¶ 37-38.

**Discussion**

The parties agree that Illinois law applies, and so that is the law that the court will apply.

*See McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998). The Seventh

Circuit has summarized Illinois law governing the interpretation of insurance policies as follows:

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011) (citations omitted). A

court "will not search for ambiguity where there is none." *Valley Forge Ins. Co. v. Swiderski*

*Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006); *see also Native Am. Arts, Inc. v. Hartford Cas. Ins.*

*Co.*, 435 F.3d 729, 732 (7th Cir. 2006). Where, as here, endorsements are attached to the policy,

the court must construe the policy "in conjunction with endorsements in order to determine the

meaning and effect of the insurance contract." *Pekin Ins. Co. v. Recurrent Training Ctr.*, 948

N.E.2d 668, 673 (Ill. App. 2011).

"To determine whether an insurer has a duty to defend its insured, [the court] compare[s]

the factual allegations of the underlying complaint … to the language of the insurance policy. If

the facts alleged in the underlying complaint fall within, or potentially within, the policy's

coverage, the insurer's duty to defend arises." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*,

622 F.3d 806, 810 (7th Cir. 2010) (citations and internal quotation marks omitted); *see also*

*Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1178 (7th Cir. 2013). An insurer

may decline to defend a lawsuit only where "it is clear from the face of the underlying complaint

that the allegations set forth … fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Valley Forge*, 860 N.E.2d at 315; *see also Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688 (7th Cir. 2008). "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer." *Amerisure*, 622 F.3d at 811 (internal quotation marks omitted). "Insurers have the burden of proving that an exclusion applies. Insureds, in turn, have the burden to prove that an exception to an exclusion restores coverage." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010) (citation omitted).

Applying these principles, the court concludes that the Exclusion—subject to the limited obligation noted at the end of the opinion—relieves Nationwide of its obligation to defend and indemnify Illinois Cheer in the Does' underlying suit. Paragraph 1 of the Exclusion states that coverage does not extend to "'bodily injury' … arising out of … [t]he actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured." Doc. 17-7 at 10. It is beyond dispute that Abrahams is alleged in the underlying suit to be a person who inflicted bodily injury on Jill Doe by subjecting her to criminal sexual abuse while she was in Illinois Cheer's custody, and it also is undisputed that Illinois Cheer is an "insured" under the policy. Given these predicates, the Exclusion applies here, and Nationwide need not defend or indemnify Illinois Cheer in the underlying suit. *See Nautilus Ins. Co. v. Our Camp, Inc.*, 136 F. App'x 134, 137-39 (10th Cir. 2005) (unpublished but citable pursuant to 10th Cir. R. 32.1(C)) (Wyoming law) (holding that a materially identical exclusion applied under materially identical circumstances); *McAuliffe v. N. Ins. Co. of N.Y.*, 69 F.3d 277, 279-80 (8th Cir. 1995) (Missouri law) (same); *Sarah G. v. Maine Bonding & Cas. Co.*, 866 A.2d 835, 838-39 (Me. 2005) (same); *Community Action for Greater Middlesex Cnty., Inc. v. Am. Alliance Ins. Co.*, 757

A.2d 1074, 1081-83 (Conn. 2000) (same); *Nw. G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179, 183-84 (N.D. 1994) (same).

The court adds, though it is unnecessary to do so, that coverage for the negligence claim and willful and wanton misconduct claim (which, as noted above, is a form of aggravated negligence) in the underlying suit is excluded by Paragraph 2 of the Exclusion, which states that the policy does not cover "bodily injury" arising out of the "negligent … [e]mployment; [i]nvestigation; [s]upervision; [r]eporting to the proper authorities, or failure to so report; or [r]etention … of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1." Doc. 17-7 at 10. The "person for whom any insured is or ever was legally responsible" is Abrahams, Illinois Cheer's employee, and the Does' negligence claim alleges that Illinois Cheer negligently failed to supervise, negligently retained, and negligently failed to report instances of Abrahams's sexual misconduct. Doc. 17-4 at 7-8. And as discussed above, Abrahams's conduct toward Jill Doe would be excluded from coverage by Paragraph 1. Thus, Paragraph 2 of the Exclusion applies here as well.

Illinois Cheer and the Does offer several reasons why the Exclusion does not preclude coverage. Docs. 30-1, 34, 40, 42, 47, 53. Their arguments are considered in turn.

*First*, Illinois Cheer argues that because the policy does not define "abuse" or "molestation," and because a popular dictionary gives various definitions to those terms, their "customary meaning and understanding creates some confusion as to their applicability to the underlying factual situation that gives rise to these claims." Doc. 34 at 10. The argument is without merit, as "abuse" and "molestation" have a readily understood meaning, and that meaning encompasses what Abrahams is alleged in the underlying suit to have done to Jill Doe.

The court cannot improve on the Supreme Court of Connecticut's discussion of this point in *Community Action for Greater Middlesex County, Inc. v. American Alliance Insurance Company*, *supra*, a coverage dispute where the underlying suit alleged that a young girl had been sexually molested. 757 A.2d at 1076. The applicable policy had an "Abuse or Molestation Exclusion" identical to the one here, and the insured in *Community Action*, like Illinois Cheer, contended that "because the words 'abuse' and 'molestation' are not defined in the policy, the meaning of the policy exclusion is 'hopelessly ambiguous,'" resulting in "there [being] no way to conclusively determine that the facts alleged in [the underlying] complaint constitute allegations of 'abuse' or 'molestation.'" *Id*. at 1082. The court rejected that argument and held that "the language of the plaintiff's policy excluding abuse and molestation from coverage is clear and unambiguous," reasoning as follows:

> According to the plaintiff, the exclusion is ambiguous because the policy does not define the words "abuse" and "molestation." In support of this contention, the plaintiff cites to the multiple definitions of those words contained in the dictionary, and suggests that, because each of the two words carries several different connotations, both words must be ambiguous. We disagree. The fact that a word may have several definitions does not necessarily render it ambiguous. The policy exclusion exempts the defendant from liability for "the actual or threatened abuse or molestation by anyone of any person …." Whatever other conduct that broad language may include within its purview, it certainly includes unwanted contact of a sexual nature.

*Ibid*.; *see also McAuliffe*, 69 F.3d at 279 (holding that a sexual relationship between a married parishioner and her priest was "abusive within the exclusion's plain meaning," where the "abuse or molestation exclusion … provides that coverage 'does not apply to [claims] arising out of: (a) the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured'").

Illinois Cheer does not cite any authority, and the court is aware of none, holding that the undefined terms "abuse" and "molestation" in an insurance policy do not encompass sexual

misconduct absent a specific definition in the policy. The cases that Illinois Cheer does cite, Doc. 34 at 11-12, are inapposite. In *American Family Mutual Insurance Co. v. Bower*, 752 F. Supp. 2d 957 (N.D. Ind. 2010), the court held that the policy's molestation exclusion was ambiguous only because it did not specify whether it applied to parents' negligence in failing to prevent their son from sexually abusing a minor on their premises, not because the son's sexual contact with the minor did not qualify as "molestation." *Id.* at 967-68. And in *Quigley v. Travelers Property Casualty Insurance Co.*, 630 F. Supp. 2d 1204 (E.D. Cal. 2009), the court held that the policy's molestation exclusion did not bar coverage for negligence claims because "no acts of molestation have been proven or admitted," and not because the alleged sexual contact with a minor, if verified, would not have qualified as "molestation" under the policy. *Id.* at 1220-21.

*Second*, Illinois Cheer argues that because "[t]he sexual contact between Brad Abrahams and Jill Doe was consensual," Abrahams's conduct does not constitute "abuse" or "molestation" under the Exclusion. Doc. 34 at 10. That argument fails because a thirteen-year-old minor, as Jill Doe was at the time, is incapable of consenting to sexual activity. The age of consent in Illinois is seventeen or, in some limited circumstances, eighteen. *See* 720 ILCS 5/11-1.50; 720 ILCS 5/11-1.20. "The reasoning behind the age of consent is that young people lack maturity in judgment and the ability to comprehend the consequences of such activity." *Schlosser v. State*, 965 N.E.2d 430, 434 (Ill. App. 2012). Under Illinois law, then, "a young child is incapable of consenting to an act of intercourse because she cannot be expected to understand the nature of the act." *Country Mut. Ins. Co. v. Hagan*, 698 N.E.2d 271, 277-78 (Ill. App. 1998); *see also United States v. Rogers*, 587 F.3d 816, 820 (7th Cir. 2009) ("Minors lack the capacity to consent, and so sexual contact with a minor is always 'without consent.'"). Illinois Cheer does cite a

Louisiana intermediate appellate court decision holding that a fourteen-year-old girl had had "consensual" sex that, because it was consensual, could not be characterized as molestation for purposes of an insurance policy's molestation exclusion. *See Newby v. Jefferson Parish Sch. Bd.*, 738 So.2d 93, 97-98 (La. App. 1999). But as noted above, interpretation of the policy here is governed by Illinois law, which provides that there is no such thing as consensual sex with a thirteen-year-old child.

*Third*, the Does contend that the policy's exclusion of coverage for "[t]he negligent … [r]eporting to the proper authorities, or failure to so report … of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1" is void against Illinois public policy. Doc. 30-1 at 10-11; *see also* Doc. 53 at 4-5. In support, the Does cite an Illinois mandatory reporting statute, which requires "recreational or athletic program or facility personnel" and other mandatory reporters to report child abuse to the proper authorities. 325 ILCS 5/4. The Does say that the statute's "underlying purpose to protect our children in this state cannot be circumvented by the exclusion written into the policy," and that the "end result would dictate insurance coverage for the failure of [Illinois Cheer] personnel to fulfill their statutory duty." Doc. 30-1 at 11.

Illinois law holds that "[t]he power to declare a private contract void as against public policy is … exercised sparingly," and that "[a]n agreement will not be invalidated on public grounds unless it is clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless it is manifestly injurious to the public welfare." *Progressive Universal Ins. Co. of Ill. v. Liberty Mut. Fire Ins. Co.*, 828 N.E.2d 1175, 1180 (Ill. 2005). The Does fail to explain in any of their briefs how *excluding* coverage for the negligent failure to report a sexual molester to the proper authorities could possibly undermine

the public policy expressed in the mandatory reporting statute. The point is therefore forfeited. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). The point is meritless in any event because excluding coverage would tend to advance the statute's goals by increasing the insured's incentive to comply, as policyholders will know that coverage will not be forthcoming if they are sued for failing to report a child molester.

*Fourth*, the Does assert that the Exclusion does not preclude coverage for the fiduciary duty claim in the underlying suit. Doc. 30-1 at 11. The Exclusion states that the policy "does not apply to 'bodily injury' … arising out of … [t]he actual … abuse or molestation by anyone of any person while in the care, custody or control of any insured." Doc. 17-7 at 10. The fiduciary claim alleges that Illinois Cheer owed the Does "the duty to warn, duty to disclose, the duty to prevent and the duty to protect minors and vulnerable young adults from sexual exploitation by [Illinois Cheer] employees and agents in positions of authority or control over [Illinois Cheer]'s students," and that Illinois Cheer "breached its fiduciary duty to the [Does] by engaging in and allowing the conduct described herein." Doc. 17-4 at 11-12. The "conduct described" refers to Abrahams's sexual abuse of Jill Doe. As Nationwide correctly notes, "there would be no breach of fiduciary duty claim against [Illinois Cheer] if Abrahams had not sexually abused Jill," and "[a]ll of the allegations against [Illinois Cheer] arise from and are premised upon sexual abuse, which is excluded from the Policy pursuant to the Exclusion, except as for coverage provided by the Endorsement." Doc. 43 at 14-15. It follows that the fiduciary duty claim arises out of Abrahams's sexual abuse of Jill Doe, and therefore that the Exclusion applies to that claim. *See Hess v. Travelers Cas. & Sur. Co. of Am.*, 2013 WL 623981, at *5 (N.D. Ill. Feb. 20, 2013) (holding that a fiduciary duty claim alleging that a building association's board members allowed

construction defects in the condominium fell within the exclusion's "arises out of … construction defects" language because the "breach of fiduciary duty claim … clearly 'originates' from the construction defects alleged in the [underlying suit]").

*Fifth*, Illinois Cheer argues that "[a]ny determination as to duty to indemnify should await resolution of the underlying case because factual issues may be resolved in that case that could affect the determination of indemnification." Doc. 34 at 13. The argument is without merit. Because the court has held that Nationwide has no duty to defend Illinois Cheer in the underlying suit, it necessarily has no duty to indemnify Illinois Cheer in that suit. *See Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1081 (Ill. 1993) ("In cases such as the instant case where no duty to defend exists and the facts alleged do not even fall *potentially* within the insurance coverage, such facts alleged could obviously never *actually* fall within the scope of coverage. Under no scenario could a duty to indemnify arise. Clearly, where there is no duty to defend, there will be no duty to indemnify and we find that the plaintiff-insurers have no duty to defend or indemnify the insureds in this case."); *Fremont Comp. Ins. Co. v. Ace-Chicago Great Dane Corp.*, 710 N.E.2d 132, 136 (Ill. App. 1999) ("where a court properly determines that an insurer has no duty to defend, it may also determine that the insurer has no duty to indemnify").

*Sixth*, Defendants maintain that even if the Exclusion excludes coverage for the claims in the underlying suit, the Endorsement does not exclude coverage for those claims, which means that the Endorsement conflicts with the Exclusion, which in turn means that the Endorsement supersedes the Exclusion, which in turn means that the policy covers rather than excludes those claims. Doc. 30-1 at 1-10; Doc. 42 at 1-5; Doc. 47 at 2-4; Doc. 48 at 6; Doc. 53 at 2-3. The predicate of Defendants' argument is a slight difference between the Exclusion and the

exclusionary language in the Endorsement (recall that the Endorsement has two parts, the exclusionary language, and the language requiring Nationwide to reimburse Illinois Cheer for up to $100,000 in defense costs in defending the otherwise excluded abuse and molestation claims). The Exclusion provides that the policy does not apply to bodily injury arising out of "[t]he actual or threatened abuse or molestation *by anyone* of any person." Doc. 17-1 at 10 (emphasis added). The exclusionary language of the Endorsement states that the policy does not apply to bodily injury arising out of "[t]he actual or threatened abuse or molestation *by any Insured* of any person." Doc. 17-7 at 10, 31 (emphasis added).

Abrahams qualifies as an "anyone" under the Exclusion, but he does not qualify as an "Insured" under the Endorsement. The reason is that the policy defines an "insured" as the insured organization's "'executive officer[]' …, but only with respect to [his] duties as [the organization's] officer[]." Doc. 17-6 at 25. Although Abrahams was an executive officer of Illinois Cheer, he certainly was not acting pursuant to his duties as an officer when he sexually abused Jill Doe. *See Md. Cas. Co. v. Lab Discount Drug, Inc.*, 468 F. Supp. 2d 862, 869 n.10 (S.D. Miss. 2006) (holding that the "alleged acts of sexual molestation" by the insured organization's officer "were clearly outside his duties as an officer or director" and thus were not covered by the policy); *Am. Mfrs. Mut. Ins. Co. v. Stallworth*, 433 F. Supp. 2d 767, 771 (S.D. Miss. 2006) (same). Abrahams therefore does not qualify as an "Insured" under the policy, which means that the abuse of Jill Doe was not the "abuse or molestation by any Insured of any person," which in turn means that the exclusionary language of the Endorsement does not cover the underlying suit.

The question then becomes: Why does this matter, given that the Exclusion already covers the underlying suit? Defendants say that it does matter due to the principle that if "the

provisions of a policy and an attached endorsement conflict, the terms and conditions of the endorsement control and supersede the conflicting policy provisions." *Pekin Ins. Co. v. Recurrent Training Ctr.*, 948 N.E.2d 668, 673 (Ill. App. 2011); *see also Cent. Ill. Pub. Serv. Co. v. Allianz Underwriters Ins. Co.*, 608 N.E.2d 155, 159 (Ill. App. 1992). That principle applies here, Defendants maintain, because the Endorsement's exclusionary language is narrower than, and therefore conflicts with, the Exclusion. The result, Defendants conclude, is that the Endorsement supersedes the Exclusion, which means that the Does' state court suit is not excluded from coverage.

Defendants' argument fails at the threshold because both the Exclusion and the Endorsement are technically endorsements to the policy; thus, this is not a situation where "an attached endorsement" is argued to be inconsistent with "the provisions of a policy." Defendants' argument also fails for a separate and more fundamental reason, which is that the Endorsement's exclusionary language does not conflict with the Exclusion. The Endorsement's exclusionary language being narrower than the Exclusion gives rise to an overlap, not a conflict. Illinois law holds that "[m]erely because [two] provisions tend to overlap does not render them conflicting." *Thornton v. Ill. Founders Ins. Co.*, 418 N.E.2d 744, 747 (Ill. 1981). This principle is important, even essential, to insurance law because "insurance policies are notorious for their simultaneous use of both belts and suspenders, and some overlap is to be expected." *Certain Interested Underwriters at Lloyd's v. Stolberg*, 680 F.3d 61, 68 (1st Cir. 2012); *see also Britamco Underwriters, Inc. v. J.O.C. Enters., Inc.*, 623 N.E.2d 1036, 1039 (Ill. App. 1993) ("Nor does ambiguity arise from redundancy or from prolixity.") (citations omitted).

The point regarding the tendency of insurance policies to use belts and suspenders is illustrated by *Thornton*. The policy in *Thornton* provided coverage for an "occurrence," which

was defined as "an accident … which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." 418 N.E.2d at 746. An attachment to the policy, titled "Exclusion of Assault and Battery," provided that "the insurance does not apply to Bodily Injury or Property Damage arising out of assault and battery." *Ibid*. The question presented was whether the policy covered liability arising from a bar fight. The insured argued, and the state appellate court held, that while "the definition of 'occurrence' in the policy, by itself, would exclude any intentional or wilful act," that definition "rendered the 'exclusion of assault and battery' provision redundant 'since a battery necessarily involves an intentional act,'" which in turn meant that "the policy was ambiguous since 'the battery exclusion removes from coverage something which was never included.'" *Id*. at 747. The Supreme Court of Illinois reversed, explaining that "[b]oth clauses are clear and precise on their face," that "[t]he 'occurrence' definition sets out broadly the type of event covered by the policy of insurance, that is, 'an accident … neither expected nor intended from the standpoint of the insured,'" and that "[t]his definition, read together with the exclusion provisions, creates no conflict." *Ibid*. The court explained that, "under the policy, acts constituting a battery are excluded, as are intentional acts of the insured," and that "[t]he fact that a battery is necessarily an intentional act does not create an ambiguity." *Ibid*. By the same token, under the Nationwide policy here, molestations committed by any person are excluded, as are molestations committed by an insured, and the fact that a molestation by an insured is necessarily a molestation by any person creates no conflict between the Endorsement's exclusionary language and the Exclusion.

Somewhat closer to the mark is *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105 (2d Cir. 1993). The insured in *United National*, which operated a nightclub, sought coverage for a suit brought by a patron who had been sexually assaulted on the

nightclub's premises. *Id*. at 106. The policy had an assault and battery exclusion, which excluded "[c]laims arising out of an assault and/or battery," and it also had a sexual molestation provision, which excluded claims for "bodily injury arising out of alleged and/or actual 'sexual abuse' of or 'sexual molestation' of a person not having attained the age of sixteen (16) years." *Id*. at 107. The insurer denied coverage, invoking the assault and battery exclusion, as the underlying plaintiff was over sixteen years old. *Ibid*. The district court ruled for the insured, holding that "the sexual molestation clause, which excludes coverage for claims arising from the sexual abuse or molestation of persons under the age of 16, would not have been necessary 'had the assault and battery clause been as clear and unambiguous as [the insurer] maintains'" in excluding coverage for sexual assaults on persons over the age of sixteen. *Ibid*. The district court accordingly concluded that "the sexual molestation exclusion could be interpreted to mean that only sexual assaults on patrons 16 years old or younger would be exempted; all others would be within the scope of general liability coverage." *Ibid*.

The Second Circuit reversed. The court first held that the assault and battery exclusion, considered alone, covered the claims arising from the sexual assault. *Id*. at 108. The court then held that "[t]he sexual molestation exclusion does not create or evidence any ambiguity in the assault and battery exclusion." *Ibid*. The court explained that "[w]hile the sexual molestation clause overlaps with the assault and battery clause insofar as both would operate to exclude from coverage claims arising out of sexual assault and battery against a person under 16 years old," "[t]he overlap of the clauses … does not affect the applicability of the assault and battery exclusion to the rape of an adult." *Id*. at 108-09. (The Second Circuit was applying New York law, but there is no basis to believe that New York law differs from Illinois law in this respect.)

Likewise, in the present case, the fact that the Endorsement's exclusionary language does not cover the underlying suit because Abrahams was not an "Insured" does not create a conflict with the Exclusion or otherwise affect the Exclusion's applicability to the Does' suit. The governing principle is simple: "If one exclusion in an insurance policy leaves some hope for an exception [here, the Endorsement's exclusionary language], but that glimmer of hope is extinguished by another exclusion [here, the Exclusion], there is no basis for a finding of coverage." *Stolberg*, 680 F.3d at 67; *see also In re SRC Holding Corp.*, 545 F.3d 661, 670 (8th Cir. 2008) ("[A]ny overlapping in the coverage excluded by Endorsements 3 and 9 is not sufficient to disregard the broad and unqualified language of Endorsement 3. Nothing prevents the parties from using a 'belt and suspenders' approach in drafting the exclusions, in order to be 'doubly sure.'"). Because there is no conflict between the Endorsement's exclusionary language and the Exclusion, the maxim upon which Defendants rely, that conflicts between a policy and an endorsement are resolved in the endorsement's favor, has no application here. No reasonable insured in Illinois Cheer's position could plausibly interpret the Endorsement as having negated the Exclusion and restored coverage for an abuse or molestation committed by anybody other than an Insured.

In urging the contrary result, Defendants cite extrinsic evidence regarding changes that Nationwide recently made to align the Endorsement's exclusionary language with the Exclusion. Doc. 40 at 3; Doc. 30-1 at 5; Doc. 34 at 12. But because the applicable policy is unambiguous in all relevant respects, the extrinsic evidence is irrelevant and will not be considered. *See State Farm Mut. Auto. Ins. Co. v. Rodriguez*, 987 N.E.2d 896, 905 (Ill. App. 2013) (holding that the "four corners" rule precludes the consideration of extrinsic evidence where the insurance policy's language is unambiguous); *Gould & Ratner v. Vigilant Ins. Co.*, 782 N.E.2d 749, 757

(Ill. App. 2002) ("[w]hether Vigilant [Insurance Company] changed its Professional Exclusion … does not affect our interpretation of the policy language currently before us").

That leaves the matter of the $100,000 in defense costs called for by the Endorsement. The Endorsement's exclusionary language does not cover the Does' underlying suit, and its "defense costs" provision is co-extensive with the exclusionary language. Doc. 17-7 at 31 ("Notwithstanding the foregoing, the Company will reimburse you for 'defense costs' [limited to $100,000] which result from a claim in any way arising out of *any such* abuse or molestation.") (emphasis added). Given this, Nationwide might have argued that it has no obligation under the Endorsement to reimburse Illinois Cheer for any defense costs incurred in the Does' underlying suit. But Nationwide makes no such argument, and in fact maintains that Illinois Cheer is "entitled to the $100,000 limit for 'defense costs' under the … Endorsement until such time as the limit is exhausted," Doc. 36 at 15, so Nationwide will be obligated to reimburse such costs.

## Conclusion

For the foregoing reasons, Nationwide's motion for judgment on the pleadings is granted, and it necessarily follows from that result that Defendants' summary judgment motions must be denied. The court declares that Nationwide has no duty to defend or indemnify Illinois Cheer in the Does' state court suit, except that Nationwide must reimburse Illinois Cheer for up to $100,000 of Illinois Cheer's defense costs in that suit. Nor does Nationwide have any duty to defend or indemnify Abrahams in the state court suit; Abrahams has defaulted, and in any event his rights under the insurance policy are no greater than Illinois Cheer's.

March 17, 2014

_____

United States District Judge